GEE *v.* CHESHIRE COUNTY MUT. FIRE INS. CO. {DECEMBER 15, 1874.

The plaintiff obtained a policy of insurance from The Niagara Insurance Co. on his house, barn, and other property, which contained a condition that "if the assured shall have existing, during the existence of this policy, any other contract for insurance (whether valid or not) on the same property, unless consented to, &c., then this insurance shall be void." Afterwards, without surrendering or cancelling this policy, he obtained a policy from the defendants on part of the same property, which contained the usual condition against double insurance. Up to the time the property was destroyed by fire the plaintiff was not aware of the condition in either policy, and acted in good faith throughout. *Held*, that the insurance in the Niagara company was subsisting, within the fair meaning of the condition in the defendants' policy, at the time that policy was obtained, so that the plaintiff cannot recover in this action for property covered by the Niagara policy.

*Quære*, whether the condition in the Niagara policy, so far as it speaks of an *invalid contract of insurance*, is not void for repugnancy to the contract of indemnity of which the policy is evidence.

The following facts were agreed by the parties for the purpose of obtaining the opinion of the court thereon. The action is assumpsit on a policy of insurance.

On the first day of January, 1868, the plaintiff, Austin W. Gee, obtained a policy of insurance from The Niagara Fire Insurance Company on his house, barns, furniture, and produce in Marlow, N. H.  This policy contained the following proviso : " And provided further, if the assured, or any other person or parties interested, shall have existing, during the continuance of this policy, any other contract or agreement

---

* 54 N. H.

for insurance (whether valid or not) against loss or damage by fire on the property hereby insured, or any part thereof, not consented to by this company in writing, and mentioned in or endorsed upon this policy, then this insurance shall be void and of no effect." On August 22, 1870, the plaintiff obtained a policy from the defendants on the same property, and also " on hog-house, 14 by 19 feet, the sum of fifty dollars, and on clothing in said dwelling-house and ell, one hundred dollars." Sec. 10, of the defendants' act of incorporation, is as follows, viz.: "And be it further enacted, that if insurance on any house or building shall be and subsist in said company and in any other office, or from and by any other person or persons, at the same time, the insurance made in and by said company shall be deemed and become void, unless such double insurance subsist with the consent of the directors, signified by endorsement on the back of the policy, signed by the president and secretary." The act of incorporation of the defendants, and the proviso in the first mentioned policy, are in very fine print, and the clause against double insurance in neither of the policies was known to the plaintiff, who acted in good faith throughout, until the property was destroyed.

*Wait*, for the plaintiff.

*Wheeler & Faulkner*, for the defendants.

* LADD, J. In *Gale* v. *The Ins. Co.*, 41 N. H. 170, the plaintiff, having a valid insurance in one company, with a condition against double insurance, obtained a policy in another company which also contained a similar condition; and it was held, in accordance with the general current of authority, that the first policy was not rendered invalid for the reason that the second never had any vitality, and did not constitute any breach of the condition in the first.

In the present case, up to the moment when the form of a contract with the defendants was completed, the plaintiff had a valid contract of insurance with the Niagara company. But now it is said that the idle ceremony of taking out an invalid policy with the defendants was a breach of a condition found in the policy of the Niagara company, not indeed against double insurance, but, if it amounts to anything, a condition against an attempt to procure double insurance; that thereupon the Niagara policy became void, and therefore the argument is, there was no instant of time when there was a double insurance, and so the defendants' policy is still in full force, notwithstanding their condition. In other words, that the whole force and effect of the law, as settled in this state, as well as in other jurisdictions, is avoided, or, to use a more appropriate expression, evaded, and a policy which otherwise would have been nugatory in its inception, by virtue of an express condition incorporated into it, made valid and of binding force by four words,

---

* CUSHING, C. J., having been of counsel, did not sit.

found enclosed in brackets, in the middle of the condition, finely printed, in the Niagara policy.

I am unable to adopt this view. Doubtless insurance companies may insert conditions in their policies to protect themselves against the mischiefs of double insurance; and, unless such conditions are repugnant to the contract evidenced by the policy, or are for some other legal cause inoperative, effect will be given to them in accordance with the intention of the parties as expressed in the instrument.

The condition in the defendants' policy is the usual condition inserted for this legal and proper purpose; and it seems to me it would be straining a point, as well as introducing a refinement which the law ought not to tolerate, to hold that the Niagara policy did not survive the execution of the defendants' policy so as to render the same invalid, within the fair and sensible construction of that condition. The construction contended for would, as it seems to me, tend to invite rather than discourage the introduction into policies of insurance of astute and perplexing conditions, and to promote rather than discountenance the worst kind of rivalry between rival companies to see which should succeed best in protecting themselves in this way against liability in case of loss, at the expense of others at least equally entitled to the equitable consideration of the court, or at the expense of the assured.

I am of opinion that when the plaintiff, without surrendering or in any way cancelling or intending to cancel his policy in the Niagara company, procured another policy on the same property from the defendants, there was a double insurance within the fair meaning of the condition in that policy, and that the defendants cannot be held liable for the loss of the property covered by the Niagara policy.

This is as far as it is necessary to go in the present case. But it is not to be understood that I accept the view that the Niagara policy was rendered invalid by the nugatory act of the plaintiff in procuring a policy from the defendants.

The condition under consideration in the Niagara policy, as already remarked, is not against double insurance, nor is it against any specified act on the part of the plaintiff like the obtaining of an invalid policy in some other company; but it is expressed in terms very vague and very general, against the making of an *invalid* contract of insurance. What is an invalid contract of insurance? Obtaining a nugatory policy in some other company has been held over and over again not to constitute any contract at all. It confers no rights on the one hand, and imposes no obligations on the other. It is not a contract, it is a mere nullity. How can that which is not a contract, in any legal or even popular sense of the term, properly be called an invalid contract? Suppose the plaintiff had gone through the form of making a contract with some person who represented that he had authority to act for and bind some insurance company, when, in point of fact, he had no such authority, and in that way obtained a policy which was void by reason of fraud or forgery, or both, on the part of the pre-

tended agent: would that constitute an invalid contract of insurance within the meaning of this condition?

Illustrations and queries of this sort, showing the extraordinary nature of the questions that might arise in the construction of such a condition, need not be multiplied. I only desire to say, that I am not satisfied that the act of the plaintiff brings the case within the terms of the condition, even admitting that the condition is in any view a valid one. But I am not prepared to admit that the condition is a valid one. I do not suppose it would be contended that a condition, that the policy should be void in case the plaintiff did nothing at all, would be a valid condition. Most certainly it would be void for repugnance. How does it change the legal aspect of the matter to say that it shall be void if he does an act which, in the eye of the law, amounts to exactly the same thing as though he had done nothing at all? The utmost that can be said of it is, that it is a condition against *an attempt* to procure double insurance; and is it to be held that such a condition is legally consistent with the scope and effect of the contract, as evidenced by the policy? If *an attempt*, resulting in total failure, may be allowed the effect to avoid a policy, why not allow a simple purpose or intention, formed in the mind of the assured but never put into action, the same force whenever such secret purpose can be discovered? I think I should hesitate before coming to the conclusion that a condition, declaring the policy forfeited if the assured makes an abortive attempt to procure double insurance, is so consistent with the contract to which it is annexed that it can be upheld in giving construction to the whole instrument taken together.

It may be said that an invalid contract of insurance, if believed by the assured to be valid, furnishes the same temptation to a fraudulent destruction of the property by him as though it were valid; and that is doubtless true. But the answer is, that this has not heretofore been regarded as a sufficient reason for holding both policies void, as is shown by the case of *Gale* v. *The Ins. Co.* The supposed double insurance would, of course, be evidence more or less cogent for the jury to consider upon the question whether the assured burnt his own property; but it does not furnish a legal reason why a condition which ought to be held void for repugnancy, on a fair construction of the whole instrument in which it is found, should be declared valid.

If these views be correct, they bring us to the same result already reached by another road; for, if the condition against an invalid contract of insurance contained in the Niagara policy he held in operation, the case stands in all respects like *Gale* v. *The Ins. Co.;* and there can be no recovery against the defendants, upon the fact stated in the case, except for the hog-house and the clothing, which were not covered by the Niagara policy.

SMITH, J. The question raised in this case was settled in *Gale* v. *Ins. Co.*, 41 N. H. 170, which is in conformity with the general current of authorities. It is claimed, however, by the plaintiff, that, inasmuch

as the policy of the Niagara company provides that by the existence of any other agreement for insurance, *whether valid or not*, the insurance in that company shall be void, that policy must inevitably be void, and being so void, there is nothing to prevent the validity of the policy of the defendant company. Even if the first policy be void for that reason, I do not think that fact will make valid the second. At the time the plaintiff agreed with the defendants for the second policy, he had a valid policy in the Niagara company, and that, by the terms of the defendants' policy, rendered the second policy void. *Jackson* v. *Massachusetts Ins. Co.*, 23 Pick. 418 ; *Clark* v. *New England Ins. Co.*, 6 Cush. 342; *Barrett* v. *Union Ins. Co.*, 7 Cush. 179. If, then, the Niagara policy became void, as contended by the plaintiff, as the result of his procuring the second policy, the question arises whether both policies are not void.

I do not think, however, that the provision in the Niagara policy that an *invalid* agreement for insurance shall render that policy void has that effect, for the reasons suggested by my brother LADD, namely, (1) that a nugatory policy constitutes no contract at all—it is a mere nullity ; (2) that such a condition is not a valid one, being void for repugnancy, and inconsistent with the scope and effect of the contract.

FOSTER, C. J., C. C.    I entirely agree with the views and conclusions of my brethren.                                   *Case discharged.*